BEN W. SMITH, EMPLOYEE-PLAINTIFF v. MEMORIAL MISSION HOSPITAL, EMPLOYER-DEFENDANT AND EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, CARRIER-DEFENDANT

No. 7428IC55

(Filed 1 May 1974)

1. **Master and Servant § 56— infectious hepatitis — unstopping commode — causal relationship**

    The evidence was insufficient to support a finding that plaintiff hospital employee contracted infectious hepatitis while unstopping a commode in the hospital.

2. **Master and Servant § 68— infectious hepatitis — hospital employee — occupational disease**

    The conclusions of law that infectious hepatitis is an occupational disease and that plaintiff was disabled as the result of contracting infectious hepatitis while performing the duties of his employment are not supported by sufficient evidence and must be vacated.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission dated 7 August 1973. Argued in the Court of Appeals 19 March 1974.

Plaintiff, an employee of Memorial Mission Hospital as a maintenance mechanic helper, assisted a fellow employee in unstopping a commode in one of the hospital rooms of Memorial Mission Hospital. Plaintiff and his co-worker used an "electric eel" in the process of unstopping the commode. An "electric eel" is a flexible metal cable with one end affixed to an electrical motor. When the motor is engaged, the flexible cable is turned so that the loose ends of the cable burrow into the debris plugging the passageway sought to be unplugged. This work was being done during the second or third week of February, 1971. In early March, plaintiff became ill and his illness was diagnosed as hepatitis. His co-worker also became ill with the same disease. Each filed a claim contending entitlement to compensation and medical benefits under the North Carolina Workmen's Compensation Act by reason of the benefits provided by G.S. 97-53(13), claiming that the hepatitis he contracted is an occupational disease.

After hearing, an award was made by Deputy Commissioner Leake. On appeal to the full Commission, his award was affirmed. Defendants appealed.

*No appearance for plaintiff appellee.*

*Hedrick, McKnight, Parham, Helms and Kellam, by Edward L. Eatman, Jr., for defendant appellants.*

MORRIS, Judge.

[1] Defendants contend that the award of the Industrial Commission is not supported by competent evidence and is contrary to law. Defendants' position is well taken.

Plaintiff's father testified that he was Chief Engineer for the Memorial Mission Hospital, that he was familiar with the method of unstopping a commode with an "electric eel," that the mechanic must run his hands down through a pipe which is extremely coarse, and that the mechanic must "damage his hands"—"You are striking your knuckles." There was no evidence whatever either from this witness or from plaintiff himself that he did in any way damage his hands or sustain any type of cut or abrasion. Counsel for plaintiff was allowed, over objection, to ask Dr. Woodard Farmer who treated plaintiff, the following question:

"Now, doctor, if the Commission should find that he did work in a sewer, cleaning out a sewer, and received cuts on

his hands, do you have an opinion satisfactory to yourself as to whether or not this infectious hepatitis might or could have come from his work on the sewer line?"

Dr. Farmer answered: "I think it is technically *possible* to receive a case of hepatitis by being associated with the connection of a toilet." (Emphasis supplied.)

Plaintiff's counsel was allowed, over objection, to ask Dr. John A. McLeod, a specialist in pathology, the following question:

"If the Commission should find that these two men had worked on a commode in sewage transmittal, that is a sewer line in the hospital, and received some cuts and injuries from their work there on this sewage line, do you have an opinion satisfactory to yourself as to whether they might or could have contacted and become infected with this hepatitis as a result of this work?"

Dr. McLeod also answered that "it is entirely *possible* . . ." (Emphasis supplied.)

Assuming, arguendo, that the hypothetical questions asked of the expert witnesses assumed only facts which were established by the evidence either directly or by fair and necessary implication, *Blalock v. Roberts Co.*, 12 N.C. App. 499, 183 S.E. 2d 827 (1971), it is the rule in this jurisdiction that a hypothetical question should ask the expert witness whether "a particular condition could or might have produced the result in question . . ." 3 Strong, N. C. Index 2d, Evidence, § 50, and cases there cited. Counsel followed this rule. However, the "could" or "might" refers to probability and not mere possibility. *Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E. 2d 541 (1964). The expert's opinion should be based on the reasonable probabilities known to him from scientific learning and experience. In the case before us, both experts, in their response to the hypothetical question, expressed a mere possibility. That this is not sufficient is indicated by Justice Moore in *Lockwood v. McCaskill, supra,* at 668 and 669, where he said:

"The expert may express the opinion that a particular cause 'could' or 'might' have produced the result—indicating that the result is capable of proceeding from the particular cause as a scientific fact, *i.e.,* reasonable probability in the particular scientific field. If it is not reasonably probable, as

a scientific fact, that a particular effect is capable of pro-
duction by a given cause, and the witness so indicates, the
evidence is not sufficient to establish *prima facie* the causal
relation, and if the testimony is offered by the party having
the burden of showing the causal relation, the testimony,
upon objection, should not be admitted and, if admitted,
should be stricken."

This assignment of error is sustained.

Defendants also assign as error that the crucial findings
of fact were not supported by competent evidence and the con-
clusions of law, therefore, were erroneous. With this position,
we also agree.

In finding of fact No. 3, the Commission found as a fact
that "[i]n the opinion of Dr. McLeod, both Smith and Morrow
had infectious hepatitis." The record reveals that Dr. McLeod
testified: "I do not know what kind of hepatitis Mr. Smith had."
This finding of fact also stated: "Dr. McLeod was of the opinion
that the plaintiff could or might have contacted hepatitis through
having his hands in commodes as heretofore set out." As we
have already pointed out, Dr. McLeod's answer was not "could
or might have" but only a mere possibility.

[2]   The Commission, upon the findings of fact, concluded that
"[w]hile performing the duties of his employment on or about
February 11, 1971, or February 18, 1971, the plaintiff became
infected with an *occupational disease,* to wit: Infectious hepa-
titis" and "[a]s a result of said *occupational disease,* the plain-
tiff was temporarily totally disabled from March 13, 1971,
through April 23, 1971, both dates inclusive." (Emphasis sup-
plied.)

G.S. 97-53 provides:

"The following diseases and conditions *only* shall be deemed
to be occupational diseases within the meaning of this Ar-
ticle:" (Emphasis supplied.)

Infectious hepatitis is not listed. G.S. 97-53(13) provides:

"Any disease, other than hearing loss covered in another sub-
division of this section, which is proven to be due to causes
and conditions which are characteristic of and peculiar to
a particular trade, occupation or employment, but excluding

all ordinary diseases of life to which the general public is equally exposed outside of the employment."

If plaintiff is entitled to an award for infectious hepatitis, assuming the findings are supported by competent evidence and support the conclusions of law, the recovery must be based upon the provisions of the above-quoted provisions. We are in accord with the conclusion reached by Judge Brock in the companion case, *Morrow v. Hospital,* 21 N.C. App. 299, 204 S.E. 2d 543 (1974), that "evidence presented in this case is insufficient to show that infectious hepatitis is a disease which is characteristic of and peculiar to the occupation of· (maintenance mechanic helper) acting, sometimes as a plumber, in the course of his employment for a hospital." The conclusions of law that infectious hepatitis is an occupational disease and that plaintiff was disabled as the result of contracting infectious hepatitis "while performing the duties of his employment," must be vacated.

On the record before us, the award must be vacated and the cause remanded to the Industrial Commission for entry of an award denying compensation.

Remanded.

Judges CAMPBELL and VAUGHN concur.