JOSEPHINE H. GARLAND v. BOBBY McKINLEY SHULL AND MYRTLE BAKER SHULL

No. 7825SC656

(Filed 1 May 1979)

**Damages § 13.5— doctor's opinion—possible future pain—evidence prejudicial**

　　In an action to recover for injuries sustained by plaintiff in an automobile accident, the trial court erred in permitting a doctor to state an opinion with regard to possible pain and suffering which plaintiff might suffer in the future.

APPEAL by defendant from *Walker (Ralph A.), Judge.* Judgment entered 5 April 1978 in Superior Court, BURKE County. Heard in the Court of Appeals 4 April 1979.

The plaintiff, Josephine H. Garland, was injuried on 12 March 1976 when an automobile owned by one defendant and driven by the other collided with a vehicle in which the plaintiff was a passenger. The plaintiff initiated this action by the filing of a complaint on 3 August 1977 alleging that her injuries were caused by the defendants. The defendants answered denying the plaintiff's allegations. Prior to trial the defendants stipulated their negligence and their liability for the plaintiff's injuries. The case proceeded to trial on the issue of damages.

The plaintiff's husband testified at trial that he was driving the automobile in which the plaintiff was riding at the time of the collision which gave rise to this action. He indicated that upon the collision of the two automobiles, the plaintiff's knees hit the glove compartment and her head hit the dashboard. After the collision, the plaintiff was taken by ambulance to a hospital where she remained for approximately two hours.

The plaintiff testified that she was asleep at the time of the accident and could not recall anything that happened during the accident because she was knocked unconscious. After she was taken to the hospital, x rays were made of her head and one of her knees. A large knot about the size of a goose egg developed on her upper left forehead. Her eyes were sore and subsequently became blackened. She was short of breath and experienced pain in breathing. Her knees were swollen and painful. She further testified that she developed headaches which were of a continuing nature.

On cross-examination, the plaintiff testified that she did not know what the doctor had advised her regarding her x rays, that she did not know whether the doctor dismissed her as not having any problems at all, and that she did not know whether the doctor had advised her to return to see him. In addition, the plaintiff indicated that she returned to the hospital one week after the accident and was examined by Dr. Brooch, a pediatrician. One week after seeing Dr. Brooch, the plaintiff was examined by Dr. Kenneth A. Powell, her family physician. Dr. Powell examined the plaintiff again more than one month later. Dr. Powell informed

the plaintiff that he could find nothing physically wrong with her. On 26 October 1976, the plaintiff was given a brain scan and x rays were taken. The results of both were normal. The plaintiff further testified that she had not been to any doctor who had told her that he found anything physically wrong with her. However, the plaintiff indicated that she had been taking medicine continuously for pain for approximately a year before the trial.

Dr. Powell then testified that he had seen the plaintiff during the latter part of March, 1976. An examination of the plaintiff at that time revealed that she had bruises on her left forehead and that the area over her knees was tender. Additionally, the plaintiff complained of headaches. Dr. Powell "prescribed Midrin, a headache type medicine for her." He next examined the plaintiff on 1 May 1976. His examination revealed no brain damage or localized signs, but the plaintiff's knees and head were still painful.

Dr. Powell again saw the plaintiff on 16 June 1976, at which time she still complained of headaches. He again saw her on 18 October 1976, and she complained of continuing headaches. Due to the persistency and severity of the plaintiff's headaches, Dr. Powell ordered x rays of her skull and a brain scan. The results of those tests were normal.

During his testimony, Dr. Powell was asked a hypothetical question. That question was:

Q. I want to ask you a hypothetical question or two, Doctor. If the jury should find as facts from the evidence that is presented in this case, and should find that by the greater weight of the evidence, that on March 12, 1976 while riding as a passenger in a motor vehicle that was involved in a collision with another motor vehicle; that her head and body were thrown about the interior of that vehicle with her head hitting the dashboard; and that she received a large injury to the left forehead; and a knot, or a swelling come up of approximately the size of a goose egg; that other injuries received were to the knees and to the chest; and that in addition to the blow, or the knot on the head that she received injuries about her eyes that resulted in them becoming blackened and sore around the frontal area just below the eyes; that she was rendered unconscious, taken by Emergen-

cy Medical Service Ambulance to the Glenn R. Frye Hospital where she was examined; and if the jury should further find that she thereafter was treated by you, as a medical doctor, commencing on March 13, 1976; and that over this period of time that she has had persistent headaches commencing in the left frontal parietal area of her head, going back across her head and down into the left side of the neck and into the left shoulder; and if the jury should further find from the evidence and its greater weight that she has had prescribed for her medications to assist her with this pain; and if the jury should further find from the evidence and its greater weight that the headaches continue from the time of the accident on March 12, 1976 up through the date of this trial on April 5, 1978, do you have an opinion satisfactory to yourself, as a medical doctor, whether or not the persistent headaches are permanent in nature?

There was an objection to the question, and a voir dire examination was conducted. The trial court overruled the objection, and Dr. Powell testified that he did have an opinion. It was his opinion that "The headaches may persist for years at least. An indefinite period of time." Dr. Powell was later allowed to read into evidence, over the objection of the defendants, a medical report prepared by him for the plaintiff's attorney.

At the close of all of the evidence, the following issue was submitted to the jury: "What amount, if any, is the Plaintiff entitled to recover for her injuries and damages from the Defendant?" The verdict of the jury was that the plaintiff was entitled to recover $11,000. From the entry of judgment in accordance with that verdict, the defendants appealed.

*Byrd, Byrd, Ervin & Blanton, P.A., by Joe K. Byrd and Robert B. Byrd, for plaintiff appellee.*

*Mitchell, Teele & Blackwell, by W. Harold Mitchell, for defendants appellants.*

MITCHELL, Judge.

The defendants assign as error the admission of Dr. Powell's testimony concerning his opinion of the future duration of the plaintiff's headaches. After Dr. Powell was asked the hypothetical

question, the defendant objected. The trial court then conducted a voir dire examination of the witness. During the voir dire examination, Dr. Powell testified that it was his opinion "That these headaches have resulted from the accident, and that although they may not last the rest of her life, they are—they may last for years, the exact length of time I do not know." At the conclusion of the voir dire hearing, the trial court ruled that Dr. Powell could give his opinion. When the jury returned, Dr. Powell was allowed, over objection, to answer the hypothetical question. He then indicated that in his opinion "The headaches may persist for years at least. An indefinite period of time."

"[A] physician testifying as an expert to the consequences of a personal injury should be confined to certain consequences or probable consequences, and should not be permitted to testify as to possible consequences." *Fisher v. Rogers*, 251 N.C. 610, 614, 112 S.E. 2d 76, 79 (1960). *See generally*, Annot., 75 A.L.R. 3d 9 (1977). Testimony tending to indicate that an event may occur is an indication that the occurrence of the event is possible, but it is not an indication that the occurrence of the event is certain or probable. Therefore, the trial court should not have permitted Dr. Powell to testify regarding pain which in his opinion the plaintiff may suffer in the future. That testimony was likely to have caused the jury to award compensation for future pain and suffering when, in fact, it was not competent evidence of such future injuries. Therefore, the admission of Dr. Powell's opinion with regard to possible pain and suffering by the plaintiff was prejudicial error which will require a new trial.

The defendant has brought forth and argued additional assignments of error. We need not discuss them, however, as they are not likely to recur during a subsequent trial of this action.

For the reasons previously set forth, there must be a

New trial.

Judges MARTIN (Robert M.) and WEBB concur.